IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LOWELL E. LANHAM, et al.,

                Plaintiffs,

v.                                   CIVIL ACTION NO.   2:15-cv-06358

NATIONSTAR MORTGAGE, LLC,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Pending are Plaintiffs Lowell E. Lanham and Deborah R. Lanham's Motion to Remand [ECF No. 6] and Defendant Nationstar Mortgage LLC's Motion for Leave to File a Surreply [ECF No. 23] and Motion to Consolidate [ECF No. 15].   For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to Remand, **GRANTS** Defendant's Motion for Leave to File a Surreply, and **DENIES AS MOOT** Defendant's Motion to Consolidate.

### I.     FACTUAL BACKGROUND

Plaintiffs Lowell E. Lanham and Deborah R. Lanham are homeowners with a mortgage loan serviced by Defendant Nationstar Mortgage LLC.   On April 17, 2015, they filed a lawsuit in the Circuit Court of Kanawha County, West Virginia, arising from Defendant's alleged mismanagement of their mortgage.   Plaintiffs claim that Defendant misapplied payments made during the pendency of their prior bankruptcy proceeding and, on several occasions, charged Plaintiffs numerous late fees in amounts greater than the $15.00 permissible under the West Virginia Consumer Credit Protection Act ("WVCCPA").   Specifically, the Complaint alleges

misapplication of payments (Count I), the assessment of unlawful late fees (Count II), breach of contract (Count III), and false representation of the amount of claim (Count IV), all in violation of the West Virginia Consumer Credit Protection Act ("WVCCPA").   Plaintiffs bring Count I individually, and bring the remaining counts both individually and as representatives of a proposed class, which is defined in the Complaint as: "All West Virginia citizens at the time of the filing of this action who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by the Defendant."   (Compl. at ¶ 24, ECF No. 1-1 at 5.)

Defendant removed this action on May 15, 2015 under the Class Action Fairness Act of 2005 ("CAFA").   On June 17, 2015, Plaintiffs filed their pending motion to remand claiming that Defendant has offered insufficient evidence to establish that this action meets CAFA's jurisdictional threshold of at least 100 class members and more than $5,000,000 in controversy. On August 17, 2015, Defendant moved for leave to file a surreply in further opposition to Plaintiffs' motion to remand.   The Court **GRANTS** that motion and has considered Defendant's surreply in its resolution of Plaintiffs' motion to remand.

## II.   *LEGAL STANDARD*

A civil action may be removed from state court to federal court if it is one over which the federal district court would have original jurisdiction.   28 U.S.C. § 1441(b).   If at any time prior to final judgment "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."   28 U.S.C. § 1447(c).   Under CAFA, an action may be originally brought in federal court if it has (1) at least one member of the class who is a citizen of a state different than at least one of the defendants; (2) a class of at least one hundred members; and (3) more than $5,000,000 in controversy, exclusive of interest and costs.   28 U.S.C. § 1332(d)(2)(A).

2

Defendant rightly asserts that there is no presumption against removal in CAFA cases.   (ECF No. 14 at 3 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014)).   Still, as the party seeking removal, Defendant bears the burden of establishing federal jurisdiction.   *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008); *see also Robertson v. Exxon Mobil Corp.*, ___ F.3d ___, No. 15-30920, 2015 WL 9592499, at *2-3 (5th Cir. Dec. 31, 2015) (under CAFA, the removing party bears the burden of proving jurisdictional requirements).   When jurisdiction is challenged, the removing party must prove jurisdiction by a preponderance of the evidence.   28 U.S.C. § 1446(c)(2)(B); *Dart*, 135 S. Ct. at 553-54.

*III.     ANALYSIS*

The parties are in agreement that CAFA's minimal diversity requirement is met,[1] but dispute whether Defendant has proven the numerosity and amount in controversy requirements. Defendant attempts to do so through a number of methods.   Each is discussed below.

   A.  *First Affidavit of A.J. Loll*

Defendant attempts to show satisfaction of the numerosity and amount in controversy requirements by submitting the affidavit of A.J. Loll, Vice President of Litigation at Nationstar. Mr. Loll identifies over 5000 loans serviced by Nationstar for borrowers in West Virginia at the time Plaintiffs filed their Complaint.   (Loll Aff. 2, ECF No. 1-2.)   With regard to class size, Defendant asserts that because Plaintiffs allege that the putative class consists of all West Virginia citizens who had or have loans serviced by Nationstar within the applicable statute of limitations, and because Nationstar serviced several thousand loans in West Virginia at the time of the filing of the Complaint, there are 100 or more persons in the proposed class.   Mr. Loll goes on to explain

---

[1] Nationstar is a Delaware corporation with its principal place of business in Texas. (Not. of Removal, ECF No. 1 at 4.)   Plaintiffs are residents of Kanawha County, West Virginia.

3

that if twenty-five percent of those loans had at least one violation, with each violation punishable by a maximum civil penalty of $4700 under the WVCCPA, the amount in controversy in this putative class action would exceed $5,000,000.[2] (*Id.* at 3 (multiplying 1250 potential violations by $4700 to arrive at a total amount in controversy of $5,875,000)).

While Plaintiffs' Complaint initially defines the class as "West Virginia citizens . . . who . . . had or have loans serviced by the Defendant" (Compl. ¶ 24, ECF No. 1-1), the Complaint must be read as a whole to determine the scope of the proposed class.  *See Krivonyak v. Fifth Third Bank*, No. 2:09-cv-00549, 2009 WL 2392092, at *5 (S.D. W. Va. Aug. 4, 2009); *Hedrick v. CitiMortgage, Inc.*, No. 2:12-cv-00537, 2012 WL 1458086, at *2 (S.D. W. Va. Apr. 26, 2012); *Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 526 (S.D. W. Va. 2011).   In doing so, it becomes clear that Plaintiffs' class includes only those borrowers who were assessed unlawful late fees.

In *Caufield*, this Court addressed CAFA removal jurisdiction and found that even where the putative class was defined in the complaint to include all West Virginia borrowers, the complaint, when read as a whole, made clear that "the proposed class can only consist of persons in West Virginia whose loans were serviced by EMC in violation of these WVCCPA provisions." 803 F. Supp. 2d at 526.   Because only those borrowers whose loans were serviced in the manner alleged in the complaint could be members of the class, this Court refused to adopt the defendant's view "that each and every West Virginia citizen whose loan was serviced by EMC [was] a member of the proposed class."   *Id.*

---

[2]  As computed by Mr. Loll, the maximum inflation-adjusted statutory penalty under W. Va. Code §§ 46A-5-101 and 106 was $4761.   (Loll Aff. ¶ 10-11, ECF No. 1-2.)   The adjusted maximum penalty under the WVCCPA has since increased to approximately $4800.   *See* Bureau of Labor Statistics, Consumer Price Index Inflation Calculator, http://www.bls.gov/data/inflation_calculator.htm (last visited March 4, 2016).

Such is the case here.   As in *Caufield*, Plaintiffs' Complaint initially defines their class quite broadly.   However, the Complaint goes on to specifically describe the manner in which Nationstar illegally serviced Plaintiffs' loan and the loans of others.   The class claims assert that Defendant "collect[ed] late fees from the Plaintiff and putative class members in excess of $15.00" (Count II), breached the loan agreement of Plaintiffs and putative class members by charging unlawful late fees (Count III), and attempted to collect debts and fees not owed (Count IV).   Quite clearly, these class claims include only those borrowers who incurred actual damages through the servicing of their mortgages.   A putative class cannot include members who do not share the same injury.   *See Caufield*, 803 F. Supp. 2d at 526.   The Court therefore finds Defendant's argument that the class includes all West Virginia borrowers with loans serviced by Nationstar during the relevant time period unavailing.   Proof of the number of loans serviced generally, without proof of the number of loans which were assessed illegal late fees as alleged in the Complaint, is insufficient to demonstrate that the proposed class consists of 100 or more members.

It follows that without evidence of the size of the class, the Court cannot determine the amount in controversy.   Defendant relies on *Kemper v. Quicken Loans, Inc.*, No. 5:13-cv-00091, 2013 WL 5504152 (N.D. W. Va. Oct. 2, 2013), to claim that multiplying the individual damage amounts pled in the complaint by the number of persons in the putative class is a reasonable method for calculating the amount in controversy.   *Id.* at *4.   Here, Defendant calculates the amount in controversy by claiming that all Nationstar borrowers in West Virginia during the applicable time period are members of the proposed class.   As explained above, there is no evidence to support that assertion.

This action is distinguishable from *Kemper* because in that case, the parties did not dispute that the plaintiff's complaint described a class having in excess of 100 members.   *Id.*   at *1.   In

5

*Kemper*, the plaintiff's proposed class was defined as West Virginia borrowers whose loans "were closed by a person not licensed to practice law in West Virginia, not supervised by a West Virginia-licensed lawyer, and not a bona fide full-time employee of [the defendants]." *Id*. The defendants submitted an affidavit in support of CAFA-based removal that identified the specific number of loans within the applicable time period which were closed by laypersons or non-attorney notary publics—that is, the precise number of borrowers who suffered the injury alleged in the plaintiff's complaint. *Id.* at *2. Because the defendants had submitted proof of the class size, the court held that multiplying the size of the class by the amount alleged in complaint was a reasonable method of ascertaining the amount in controversy. *Id.* at *3.

As explained above, here Defendant has not identified, nor has it provided a reasonable estimate of, the number of borrowers in the proposed class. *See Krivonyak*, 2009 WL 2392092 at *6 ("Without knowing how many people suffered injury, it is impossible to estimate the amount in controversy."). Even Defendant's "conservative estimate" of the amount in controversy based on twenty-five percent of all West Virginia loans having at least one violation is pure conjecture. While it is possible that twenty-five percent of West Virginia borrowers with loans serviced by Nationstar were charged illegal late fees as alleged in the Complaint, it is equally possible that Defendant's allegedly illegal conduct was far less rampant. Defendant bears the burden of showing by a preponderance on the evidence, beyond mere speculation, that CAFA's amount in controversy requirement is actually met. *Caufield*, 803 F. Supp. 2d at 528. As this Court stated in *Caufield*, "[t]he mere possibility that the plaintiff and the proposed class *could* meet that requirement is not enough to give this court jurisdiction." *Id.* Accordingly, the Court holds that the evidence set forth in Mr. Loll's first affidavit is insufficient to prove either CAFA's numerosity or amount in controversy requirement.

B. *Consideration of* Triplett *Subclass*

Alternatively, Defendant attempts to show satisfaction of these CAFA requirements by reference to a resolved class action previously before this Court.   In *Triplett v. Nationstar*, Civil Action No. 3:11-cv-238, this Court certified a subclass composed of 836 West Virginia borrowers whose loans had been assessed illegal late fees in excess of $15.00.   The subclass was limited to those borrowers who had been charged illegal fees by Nationstar, their loan servicer, between the years of 2007 and 2011.   Defendant argues that these claims may still be viable since it is possible that the applicable West Virginia statute of limitations has not yet run.   Because Plaintiffs' putative class and the *Triplett* subclass share the same alleged injury, Defendant contends that Plaintiffs' class includes, at very least, each of *Triplett*'s 836 subclass members.   Further, according to Defendant's calculations, the amount in controversy for this *Triplett* subclass exceeded $35,000,000.[3]

To begin, Defendant's arguments again strike the Court as highly speculative.   While it may be theoretically possible that the *Triplett* borrowers had viable claims as late as April 17, 2015, the date Plaintiffs' Complaint was filed, there is no telling how many of these 836 borrowers were assessed illegal late fees "within the applicable statute of limitations" as required by the Complaint.   Nonetheless, Plaintiffs oppose the inclusion of the *Triplett* subclass for another reason.   They claim that the *Triplett* subclass members are not eligible for counting as members of the putative class because they released their claims against Defendant as a condition of

---

[3] A.J. Loll provided testimony at the final settlement hearing in *Triplett*.   He calculated that between February 15, 2007 and July 1, 2011, late fees in excess of $15.00 were assessed against 836 West Virginia borrowers in approximately 7539 instances.   Multiplying 7539 late fee charges by $4700, the maximum recovery under the WVCCPA adjusted for inflation, results in a total amount in controversy of $35,433,300. The entire *Triplett* class action ultimately settled for $1,500,000.   (*Triplett* Final Approval Order, ECF No. 14-1 at 19).

settlement.   (*Triplett* Final Approval Order at 11, ECF No. 17-2 (dismissing with prejudice all claims of plaintiff Triplett and class members).)   Defendant counters that the *Triplett* release of claims is an affirmative defense that cannot be considered in the resolution of this jurisdictional question.

Defendant's argument finds support in *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199 (2d Cir. 1982).  This Second Circuit case holds that a defendant may not rely on an affirmative defense to undermine the *plaintiff's* assessment of the amount in controversy.   In *Zacharia*, the plaintiff brought suit in federal court alleging diversity of citizenship and an amount in controversy exceeding the then-requisite $10,000.   At the defendant's behest, the district court applied a state statute that limited the plaintiff's recovery to only $1000 and dismissed the suit for lack of jurisdiction.   The Second Circuit reversed, finding that jurisdiction must be evaluated in light of the complaint's allegations and not in light of the existence of a valid defense.   *Id.* (citing *Smithers v. Smith*, 204 U.S. 632, 642 (1907)).   Under *Zacharia*, a district court may not consider an affirmative defense no matter how soundly that defense would defeat federal jurisdiction.

The "affirmative defense rule" espoused by *Zacharia* has not found wide acceptance.   In fact, most federal appellate courts to have considered the issue seem to have ruled the other way. *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1230-31 (10th Cir. 2001) (relying on a statutory exclusive remedy provision to dismiss a common law tort claim for lack of subject matter jurisdiction); *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 352-53 (7th Cir. 1995) (dismissing for want of subject matter jurisdiction due to contractual damages cap); *Valhal Corp. v. Sullivan Assoc., Inc.*, 44 F.3d 195, 202-03, rehearing en banc denied, 48 F.3d 760 (3d Cir. 1995) (dismissing based on a statutory damage cap); *Pachinger v. MGM Grand Hotel*, 802 F.2d 362, 364 (9th Cir. 1986) (same) (disagreeing with *Zacharia*); *see also LDCircuit, LLC v. Sprint*

*Commc'ns Co.*, 364 F. Supp. 2d 1246, 1253-1255 (D. Kan. 2005) (declining to adopt *Zacharia* and finding a contractual limitation of liability provision defeated the plaintiff's amount in controversy claim).

These cases stand for the proposition that a district judge possesses the power to dismiss a case for lack of subject matter jurisdiction if it is clear, from the onset of litigation, that the plaintiff is unable to recover an amount greater than the jurisdictional limit.  *See Pachinger*, 802 F.2d at 353.  The Fourth Circuit has yet to squarely address the issue.  Nonetheless, the Court finds this precedent persuasive in counseling against the application of the affirmative defense rule in this case.  Defendant does not dispute the validity of the release of claims and does not dispute Plaintiffs' assertion that the release effectively bars the *Triplett* class members from inclusion in Plaintiffs' class (indeed, it would be folly to do so since Defendant almost certainly plans to rely on this release at a later point to define the scope of the class).   In light of these concessions, the Court finds it appropriate to consider the *Triplett* release of claims in evaluating its jurisdiction.[4]

Defendant's attempt to analogize *Zacharia* is also unsuccessful because its holding cannot be divorced from the procedural posture that gave rise to it.  Underpinning *Zacharia* was the rule that if the plaintiff's complaint alleges an amount in controversy sufficient to meet the jurisdictional threshold, that requirement is presumptively satisfied unless "it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed."  *JTH Tax, Inc. v. Frashier*, 624

---

[4] The *Triplett* "Class Settlement and Release Agreement" has not been submitted as part of the record in this action; rather, Plaintiffs have attached the *Triplett* Final Approval Order, which approves the settlement agreement and incorporates its terms, in support of their motion to remand.  (Pls.' Reply Further Supp. Mot. Remand, ECF No. 17-2.)   The settlement agreement is docketed in the *Triplett* action as an exhibit filed in support of the plaintiff's request for preliminary settlement approval.  (Pl.'s Mot. for Prelim. Appr. of Settlement, Cond. Class Cert. and Entry of Sched. Order, *Triplett v. Nationstar Mortgage, LLC*, No. 3:11-cv-00238 (S.D. W. Va. May 14, 2012), ECF No. 70-1).

9

F.3d 635, 638 (4th Cir. 2010) (citation omitted) (emphasis in original).   The same presumption of proper jurisdiction does not attend a removing defendant's assessment of the amount in controversy where, as here, the complaint is silent and the plaintiff claims that federal jurisdiction is lacking.   Rather, "the defendant's burden in these circumstances is to establish the jurisdictional amount by a preponderance of the evidence."[5]   *Bartnikowski v. NVR, Inc.*, 307 Fed. App'x 730, 734 (4th Cir. 2009).

In cases removed under CAFA, the United States Supreme Court has emphasized the need for a broad review of the evidence supporting jurisdiction.   Where the defendant's assertion of amount in controversy is disputed, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the . . . requirement has been satisfied."[6]   *Dart*, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(c)(2)(B)).   The parties have the opportunity to submit evidence outside the complaint, including affidavits, declarations, and "summary-judgment-type evidence, relevant to the amount in controversy at the time of removal."   *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995); *see Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) (citations omitted) ("Defendants may introduce their own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper."); *Berniard v. Dow Chem. Co.*, 481 Fed. App'x. 859, 862 (5th Cir. 2010) (summary judgment evidence of the amount

---

[5] Defendant emphasizes that under *Dart*, no "antiremoval presumption attends cases invoking CAFA." 135 S. Ct. at 554.   While true, Defendant must nevertheless carry its statutory burden to prove, by a preponderance of the evidence, that jurisdiction is proper. 28 U.S.C. § 1446(c)(2)(B).

[6] *Dart*, like many of the cases cited below, focuses on the amount in controversy requirement because there the class size was not in dispute. This Court finds, however, that analysis applicable to one of CAFA's requirements applies to the other requirements as well.   In addition, because Plaintiffs' Complaint is silent on both numerosity and the class size, Defendant bears the burden of proof on both.   "In this, as in many cases, the proposed class size is inextricably bound up with the amount in controversy," *Caufield*, 803 F. Supp. 2d at 527. Defendant's ability to prove one element is contingent on its success in proving the other.

in controversy is required where the amount in controversy is not "facially apparent" from the pleadings).   Indeed, in a CAFA case "[d]iscovery may be taken with regard to [the jurisdictional] question."   *Dart*, 135 S. Ct. at 554.   "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."   *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).

Given the Supreme Court's broad directive in *Dart* that "both sides submit proof and the court decides" the jurisdictional issue, this Court finds it problematic to apply *Zacharia*'s bright line rule to a *defendant's* assertion of the amount in controversy.   *See Naiyan v. Sodexo, Inc.*, No. CV 10-9872 PSG (CWx), 2011 WL 1543371 at *3 (C.D. Cal. Apr. 25, 2011) (resolving a motion to remand in a case removed under CAFA by finding that the terms of a prior settlement did not bar potential class members from recovery).   The Court is particularly reluctant to adopt *Zacharia*'s position where, as here, the release of claims definitively excludes the *Triplett* subclass members from inclusion in Plaintiffs' putative class.   The Final Approval Order in *Triplett* dismisses the claims of the *Triplett* subclass with prejudice.   (ECF No. 14-1 at 27.)   If the *Triplett* subclass members, by virtue of the dismissal of their claims, are not borrowers who may be included in Plaintiffs' proposed class, the Court ought to take this dismissal into account in its attempt to test "the reality of what is at stake in [this] litigation." *Ibarra*, 775 F.3d at 1198.

Because it is clear that the *Triplett* subclass members released their claims against Defendant as a condition of settlement, the Court declines to use their numbers to augment the size of Plaintiffs' putative class.   Similarly, because Defendant does not contest the fact that the claims at issue in *Triplett* have been dismissed with prejudice and barred from relitigation, the amount in controversy in *Triplett* cannot be evidence of the amount in controversy here.   For these reasons,

the Court **FINDS** that evidence of the size and scope of the *Triplett* subclass is insufficient to confer federal jurisdiction in this case.

      C.      *Count IV of Plaintiffs' Complaint*

As a last-ditch attempt to invoke federal jurisdiction, Defendant argues that CAFA jurisdiction independently arises from Count IV of Plaintiffs' Complaint.   Count IV alleges that Defendant violated the WVCCPA by "attempting to collect debts and fees not owed."   (Compl. ¶ 38, ECF No. 1-1.)   Because these "fees not owed" are not explicitly defined in the Count IV, Defendant reasons that they may include default fees, such as property inspection fees, which are illegal under the WVCCPA.   Defendant submits a second affidavit from Mr. Loll in which Mr. Loll identifies over 100 West Virginia borrowers who were assessed property inspection fees by Nationstar.   (ECF No. 14-1 at 4-5.)   Mr. Loll identifies 1138 instances in which Nationstar assessed a property inspection fees against these borrowers' accounts.   Defendant relies on this affidavit as alternative evidence from which the Court can find CAFA jurisdiction.

The Court finds Defendant's interpretation of Count IV dubious.   Plaintiff's class claims stem from the assessment of unlawful late fees above $15.00.   Count IV incorporates by reference the factual and legal allegations set forth earlier in the Complaint.   The Court is unwilling to join Defendant in speculating that somehow, without any supporting facts drawn from the Complaint, the unidentified fees mentioned in Count IV are property inspection fees as opposed to illegal late fees.   The Court therefore **FINDS** that Count IV does not give rise to CAFA jurisdiction.

      *IV.*      *MOTION TO CONSOLIDATE*

On July 23, 2015, Nationstar moved to consolidate this action with civil action No. 2:15-cv-01202, another lawsuit pending before this Court.   Nationstar moves to consolidate these cases

based on overlapping issues arising from the earlier class settlement in *Triplett*.   Because this action will be remanded to state court, the motion to consolidate is **DENIED AS MOOT**.

V.      *CONCLUSION*

After consideration of Defendant's evidentiary arguments in isolation and as a whole, the Court finds that Defendant has failed to prove federal jurisdiction by a preponderance of the evidence.   The Court therefore **GRANTS** Plaintiffs' Motion to Remand [ECF No. 6], **GRANTS** Defendant's Motion for Leave to File a Surreply [ECF No. 23], and **DENIES AS MOOT** Defendant's Motion to Consolidate [ECF No. 15].   It is **ORDERED** that this case be **REMANDED** to the Circuit Court of Kanawha County, West Virginia.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 11, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE